GEORGE F. HORTON ET AL., PARTNERS, ETC., PROSECUTORS, v. BOARD OF EDUCATION OF THE BOROUGH OF ORADELL ET AL., RESPONDENTS.

Decided October 11, 1928.

Before Justice PARKER, sitting alone.

For the prosecutors, *Feder & Rinzler*.

For the board of education, *J. Williard De Yoe*.

For the respondent Alberg Construction Company, *Charles J. McCarthy*.

PARKER, J. The prosecutors bid for the award of a contract with the board of education for the construction of a school house, but the board awarded the contract to respondent Alberg Construction Company. Apart from questions of laches, which I do not consider, it was quite plain at the argument that on two or three excellent grounds (*e. g.*, that prosecutors were the lowest bidders, and that the board took into consideration the varying times required to finish the work) the award was illegal, or, at least, that a writ should go, provided, always, that the board was subject to a statute requiring advertisement for bids and an award to the lowest re-

sponsible bidder. Counsel for respondents insisted that there was no statute of this character controlling the board of education of the borough; that neither the School law nor the Municipalities act applies; that the advertisement was purely voluntary; that the board was controlled only by its own discretion in making an award, and that it does not appear that such discretion was abused, which last may be conceded.

On examination, I conclude that respondents are right. As to the School law, sections 52 and 53 (*Comp. Stat., p.* 4741) are part of article 6 relating to school districts, &c., cities only. By section 243 of the same act (*Comp. Stat., p.* 4805) the city scheme may be adopted by referendum in a town, township or borough, and will then be operative therein, as in fact was the situation in *Kay* v. *Board, &c., of Kearny,* 83 *N. J. L.* 551, 553, and in *Scola* v. *Board, &c., of Montclair,* 77 *Id.* 73, 75. Both Kearny and Montclair were towns, and had adopted the city scheme. Failing such adoption in the present case—and there is no suggestion that the borough ever so acted through its electorate—we are relegated to article 7 of the School law (*Comp. Stat., p.* 4747 *et seq.*), entitled "township, incorporated town and borough school districts." Section 86, page 4751, confers general powers to build schools, &c., but there appears to be no requirement for letting out contracts by advertisement or to the lowest bidder.

Turning to the question whether legislation relating to municipal corporations generally may apply to school boards, it may be that chapter 342 of the laws of 1912 (*Pamph. L., p.* 593), applying to any "public body in any county, * * * borough or village" to let out contracts over $500 by advertisement, was broad enough to include school boards; but that act was repealed (*Pamph. L.* 1918, *p.* 734), and the obvious intent of the legislature, by passing the Municipalities act of 1917 (*Pamph. L., p.* 319) was to supersede such acts and establish a general scheme. The Municipalities act plainly does not include school boards; its scope is carefully defined in section 1 of article 1, and the phrase "governing body" is similarly defined in section 2. In neither is there any mention of a school district or board of education. While

I have not re-examined this lengthy act in detail, I venture to say that it enacts nothing on the subjects of schools, school districts or board of education by name. The index to Merrey and Eckman, "New Jersey Municipalities act," does not mention any of these subjects.

I conclude, therefore, that no competitive bidding was required under the Municipalities act; and failing the adoption by referendum of the city scheme of the School act (and no such adoption appears or is claimed), no competition was required in this case under the School act. Hence, no case for *allocatur* seems to be presented, and the rule to show cause will be discharged, with costs.